UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DR. CHARLES E BAYLESS,        )
                                       )
        Plaintiff,             )
                                       )
        v.                   )        Case No. 3:08-CV-484 JD
                                     )
ANCILLA DOMINI COLLEGE      )
                                     )
        Defendant.       )

## OPINION AND ORDER

On October 22, 2008, Plaintiff, Dr. Charles E. Bayless ("Dr. Bayless"), filed a Complaint in this Court. [DE 1]. In his Complaint, Dr. Bayless alleges that Defendant, Ancilla Domini College ("Ancilla"), removed Dr. Bayless from his Division Chairmanship in the Humanities Department and subsequently terminated his employment as professor, in violation of the Age Discrimination in Employment Act ("ADEA"). [DE 1 at 5-6]. In addition, Dr. Bayless contends that Ancilla retaliated against him in violation of Title VII of the 1964 Civil Rights Act. [DE 1 at 5].

On December 11, 2009, Ancilla filed a motion for summary judgment in regards to both of Dr. Bayless' claims. [DE 17]. On February 12, 2010, Dr. Bayless filed a response in opposition. [DE 22]. On March 1, 2010, Ancilla filed a reply. [DE 24 and DE 25]. On June 3, 2010, this case was reassigned to the undersigned for all purposes.

## I. Facts

The following facts are taken from the parties briefs and Dr. Bayless' declaration. For the most part, the facts are uncontested. The Court has indicated where the alleged facts differ.

Dr. Bayless was born on August 26, 1925 and spent his career as an educator. (Bayless

Dep., DE 19-2 at 5, 9).  Beginning in 1991, Dr. Bayless began teaching English classes at

Ancilla, a two-year liberal arts college, as an adjunct professor.  (Bayless Dep., DE 19-2 at 16;

May Decl., DE 19-3 at 2).  In 1996, Dr. Bayless accepted a full-time faculty position at Ancilla

and assumed the position of Humanities Division Chair. (Bayless Dep., DE 19-2 at 18).

In July 2006, Dr. Ronald May ("Dr. May") became the President of Ancilla.  (May Decl.,

DE 19-3 at 2).  Around the same time, Dr. Julianne Maher ("Dr. Maher"), was hired to serve as

Ancilla's Interim Academic Dean for the 2006-2007 academic year.  (Maher Decl., DE 19-14 at

2).  Upon interviewing for the interim position, Dr. Maher was requested to participate in an

accreditation review of Ancilla. (Maher Decl., DE 19-14 at 3).

To this end, shortly after being hired, Dr. Maher requested that all of the Division Chairs

provide her with summaries of issues facing their respective divisions, including Dr. Bayless.

(Maher Decl., DE 19-14 at 3).  Dr. Maher testifies that, in response to her request, all of the

Division Chairs, except Dr. Bayless, provided Dr. Maher with a satisfactory analysis, detailing

enrollment, staffing, and space issues affecting their Divisions. (Maher Decl., DE 19-14 at 3). In

contrast, Dr. Bayless submitted course material from his writing classes and a series of

complaints regarding Ancilla's students, the English Department, and the quality of Ancilla's

academic programs.  (Maher Decl., DE 19-14 at 3-4).  Dr. Maher found Dr. Bayless' submission

unsatisfactory and began questioning the quality of Dr. Bayless' leadership as Division Chair.

(Maher Decl., DE 19-14 at 4).  Shortly thereafter, Dr. Maher attended a class taught by Dr.

Bayless as part of a routine performance review.  (Maher Decl., DE 19-14 at 4).  From this

experience, Dr. Maher expressed similar disappointment and concern regarding Dr. Bayless'

teaching style and attitude.  (Maher Decl., DE 19-14 at 4).

Also in the Fall of 2006, Dr. Bayless met with Dr. May to discuss declining enrollment in

his classes and the status of his Spring creative writing class. (May Decl., DE 19-3 at 3-4; Bayless Aff., DE 23 at 2). During the meeting, Dr. Bayless suggested that the reasons for declining enrollment was due to his "high standards" and requested that his creative writing class not be canceled due to a lack of student interest. (May Decl., DE 19-3 at 3-4; Bayless Aff., DE 23 at 2). Dr. May told Dr. Bayless not to lower his standards but indicated that the decision whether to cancel the class was between Dr. Bayless and Dr. Maher. (May Decl., DE 19-3 at 3-4; Bayless Aff., DE 23 at 2). Later, in early January 2007, Dr. Maher made the decision to cancel Dr. Bayless' class for lack of enrollment. (Maher Decl., DE 19-14 at 5; Bayless Aff., DE 23 at 2). Instead, to allow Dr. Bayless to meet the required teaching hours for the semester, Dr. Maher assigned Dr. Bayless to teach a speech class. (Maher Decl., DE 19-14 at 5; Def.'s Facts, DE 19-22 at 8).

On January 11, 2007, Dr. Maher met with Dr. Bayless to address a number of concerns she had with Dr. Bayless' performance. (Maher Decl., DE 19-14 at 5-8). In particular, during the meeting, Dr. Maher discussed complaints made by Ancilla students regarding Dr. Bayless' classes and complaints made by Ancilla staff regarding Dr. Bayless' allegedly inappropriate expression of frustration stemming from an unannounced decision to move his classroom. (Maher Decl., DE 19-14 at 5-6). In addition, Dr. Maher indicated her preference to remove Dr. Bayless from his Division Chair position. (Maher Decl., DE 19-14 at 6, 9). In support of this decision, Dr. Maher articulated a number of her own concerns, including: Dr. Bayless' inadequate responses to her Division-review request; Dr. Bayless' failure to offer support following the sudden resignation of a Spanish instructor; Dr. Bayless' similar failure to offer professional guidance to a new communications professor; Dr. Bayless' lack of critical constructive feedback in his faculty evaluations; and Dr. Bayless' inaction in developing new

programs, new teaching approaches and new courses in his Division. (Maher Decl., DE 19-14 at 6-8). Following the meeting, Dr. Maher immediately emailed Dr. May to make a record of the discussion and to recommend that new leadership was necessary in the Humanities Division. (Maher Decl., DE 19-14 at 9; Maher Email, DE 19-17 at 2).

Shortly thereafter, on or around February 15, 2007, Dr. Maher made a formal recommendation to Dr. May that Dr. Bayless be removed from the Division Chair position. (May Decl., DE 19-3 at 4-5). Dr. Maher asserts that she recommended Dr. Bayless' removal based solely upon the issues discussed in her meeting with Dr. Bayless and not based on Dr. Bayless' age. (Maher Decl., DE 19-14 at 9). In addition, Dr. Maher asserts that she never recommended that Dr. Bayless be removed from his teaching position. (Maher Decl., DE 19-14 at 10).

On March 8, 2007, Dr. May met with Dr. Bayless and informed Dr. Bayless that he was being removed as Division Chair of the Humanities at the end of the academic year. (May Decl., DE 19-3 at 5). Dr. May explained that he had accepted Dr. Maher's recommendation that Dr. Bayless be removed for the reasons Dr. Maher had previously asserted to Dr. Bayless in their January 11th meeting. (May Decl., DE 19-3 at 5). In addition, Dr. May asserts that he told Dr. Bayless that had served for "a long time" as Division Chair. (May Decl., DE 19-3 at 5). Dr. Bayless contends, however that Dr. May stated that he "had held the position for a long time-for eleven years." (Bayless Aff., DE 23 at 3). Although Dr. May expressed appreciation for Dr. Bayless' length of service, Dr. May asserts that he did not say that Dr. Bayless' removal was not due to performance issues. (May Decl., DE 19-3 at 5). However, in one of the few factual disputes in this case, Dr. Bayless contends that Dr. May said that his removal had "nothing to do with performance" (Bayless Aff., DE 23 at 2). Finally, Dr. May asserts that his decision was not

motivated by Dr. Bayless' age. (May Decl., DE 19-3 at 5). At the time, Dr. Bayless was eighty-one years of age.

Later that same day, Ancilla sent Dr. Bayless a letter informing him of his reappointment as full-time professor for the following school year. (May Decl., DE 19-3 at 5; Ancilla Letter, DE 1-2 at 4). However, the letter reflected that Dr. Bayless would be expected to teach 27 credit hours instead of the 24 credit hours that he had to teach while previously holding his Division Chair responsibilities. (May Decl., DE 19-3 at 5-6; Ancilla Letter, DE 1-2 at 4). The letter also indicated that Dr. Bayless would receive an annual salary of $47,272, which Dr. Bayless contends amounted to a pay raise. (Ancilla Letter, DE 1-2 at 4).

Thereafter, Dr. May selected Professor Roba Kribs ("Professor Kribs") to replace Dr. Bayless as Division Chair. (May Decl., DE 19-3 at 6). Professor Kribs was sixty years old when she was offered the position as Division Chair. (May Decl., DE 19-3 at 6).

On April 19, 2007, Dr. May met with the Finance Committee of Ancilla's Board of Trustees to present a recommended budget for the following school year. (May Decl., DE 19-3 at 6). Due to declining enrollment at Ancilla, Dr. May suggested to the Finance Committee that three faculty and three staff positions be eliminated. (May Decl., DE 19-3 at 6-7). Dr. May did not at that time, however, determine or make recommendations regarding which positions should be eliminated. (May Decl., DE 19-3 at 7). On May 21, 2007, the Finance Committee approved Dr. May's proposed budget with the suggested cuts. (May Decl., DE 19-3 at 7).

Thereafter, in order to meet the June 30th notice deadlines for faculty members with three or more years of service, Dr. May acted quickly to determine which positions to eliminate. (May Decl., DE 19-3 at 7; Faculty Handbook, DE 19-9 at 52). Dr. May asserts that, because the decision to eliminate positions was motivated by financial reasons, he decided to eliminate the

three teaching positions with the lowest enrollments.  (May Decl., DE 19-3 at 7-8).  Dr. May asserts that, based upon this criteria and Dr. Bayless' reluctance to update his teaching methods, he decided to eliminate Dr. Bayless' position as one of the cuts.  (May Decl., DE 19-3 at 8).

On June 21, 2007, Dr. May sent Dr. Bayless a letter notifying Dr. Bayless of his non-reappointment following the 2007-2008 academic year.  (May Decl., DE 19-3 at 8; May Letter, DE 19-10 at 2).  Dr. May's letter did not disclose the reasons for Dr. Bayless' non-reappointment but instead cited a provision in the Faculty Handbook indicating that, "[s]ince a notice of non-reappointment is not a dismissal for adequate cause, the College will not state its reasons in the notice of non-reappointment." (May Decl., DE 19-3 at 9; May Letter, DE 19-10 at 2; Faculty Handbook, DE 19-9 at 52).  In addition, Dr. May's letter stated, "[g]iven your years of service to Ancilla College . . ., I will recommend to the Board of Trustees that you be granted Emeritus status." (May Letter, DE 19-10 at 2).  In so doing, Dr. May cited a second provision of the Faculty Handbook which provided, "[t]his rank may be assigned to . . . Professors who have terminated their responsibilities as a ranked faculty member for valid reasons (e.g., retirement) after ten or more years of distinguished service to the college."  (May Letter, DE 19-10 at 2; Faculty Handbook, DE 19-9 at 33).  At the time, Dr. Bayless was eighty-one years of age.

Consistent with the terms of the letter, Dr. Bayless' last day as an active professor with Ancilla was May 9, 2008.  (May Letter, DE 19-10 at 2; Bayless Decl., DE 23 at 1).  Since his termination, Dr. Bayless' position and the two other faculty positions eliminated as part of Dr. May's budget proposal have not been filled.  (May Decl., DE 19-3 at 9).  Instead, Dr. May asserts that the teaching responsibilities of the three professors have been shifted to existing Ancilla faculty.  (May Decl., DE 19-3 at 9).

## II.  Defendants' Motion for Summary Judgment [DE 17]

**A. Standard for Granting Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). "In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying" the evidence which "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law." *Brown v. City of Lafayette*, No. 4:08-CV-69, 2010 WL 1570805, at *2 (N.D. Ind. Apr. 16, 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Once the moving party has met this burden, the nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *Beard v. Whitley Cnty. REMC*, 840 F.2d 405, 410 (7th Cir. 1988). To establish a genuine issue of fact, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial, not "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *First Nat'l Bank of Cicero v. Lewco Secs. Corp.*, 860 F.2d 1407, 1411 (7th Cir. 1988). "It is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears

the responsibility of identifying the evidence upon which he relies." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008). If the nonmoving party fails to establish the existence of an essential element on which it bears the burden of proof at trial, summary judgment is proper–even mandated. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006) (citing *Celotex*, 477 U.S. at 322-23) (holding that a failure to prove one essential element "necessarily renders all other facts immaterial")).

In ruling on a motion for summary judgment, a court must view all facts in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999); *NUCOR Corp. v. Aceros Y Maquilas de Occidente*, 28 F.3d 572, 583 (7th Cir. 1994). A court must avoid the temptation to "make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Summary judgment is not a substitute for a trial on the merits or a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, the court's sole task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Payne*, 337 F.3d at 770; *Waldridge*, 24 F.3d at 920. If a reasonable factfinder could find in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770.

Thus, in responding to Defendants' Motion for Summary Judgment, the Court must credit Plaintiffs' version of the facts. In so doing, the Court does not vouch for the truth of those facts, but merely uses them to determine whether a genuine issue for trial exists. *See Herzog v. Vill. of Winnetka*, 309 F.3d 1041, 1044-45 (7th Cir. 2002).

**B. Dr. Bayless' ADEA Claim**

Dr. Bayless alleges that Ancilla discriminated against him based upon his age in violation of the ADEA, both when Ancilla removed Dr. Bayless as Division Chair and when Ancilla eliminated Dr. Bayless' teaching position.

The Age Discrimination in Employment Act ("ADEA") prohibits employers from discriminating against employees who are forty years or older, on the basis of age. 29 U.S.C. §§ 623(a), 631(a); *Tubergen v. St. Vincent Hosp. and Health Care Ctr., Inc.*, 517 F.3d 470, 473 (7th Cir. 2008). Dr. Bayless's claim for discriminatory termination can proceed under either the direct method, by proffering direct or circumstantial evidence that age discrimination motivated the employment decision, or under the indirect, burden-shifting method. *Martino v. MCI Commc'ns Servs. Inc.*, 574 F.3d 447, 452 (7th Cir. 2009); *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 641 (7th Cir. 2008); *Tubergen*, 517 F.3d at 473-74; *Hemsworth v. Quotesmith*, 476 F.3d 487, 490 (7th Cir. 2007); *Luks v. Baxter Healthcare Corp.*, 467 F.3d 1049, 1052 (7th Cir. 2006).

Under either method, however, Dr. Bayless must establish by a preponderance of evidence that age discrimination was the motivating factor for the adverse actions taken against him. *Gross v. FBL Fin. Servs. Inc.*, 129 S.Ct. 2343, 2350-52 (2009); *Martino*, 574 F.3d at 455 (noting that a plaintiff must prove that "but for his age, the adverse action would not have occurred"); *Ray v. Forest River, Inc.*, 2010 WL 3167426 *7 (N.D.Ind. 2010); *Testerman v. EDS Technical Products Corp.*, 98 F.3d 297, 301 (7th Cir. 1996). *See also Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993); *Faas*, 532 F.3d at 641 (holding, pre-*Gross*, that a plaintiff must establish that the plaintiff's age "actually motivated" the employer's decision to take adverse action against the plaintiff); *Hemsworth*, 476 F.3d at 490 (employee's protected trait "must have actually played a role in the employer's decision-making process and had a

determinative influence on the outcome.").

### 1.    *Direct Method*

Under the direct method of proof, Dr. Bayless can show either an admission by the decision maker that his actions were based on the prohibited discrimination or a convincing mosaic of circumstantial evidence that points directly to a discriminatory reason for the employer's action.  *Martino*, 574 F.3d at 452; *Faas*, 532 F.3d at 641; *Hemsworth*, 476 F.3d at 490; *Luks*, 467 F.3d at 1052-53.  Because admissions of discriminatory intent are rare, circumstantial evidence is more typically proffered to show discriminatory intent under the direct method of proof.  *Hemsworth*, 476 F.3d at 491 (noting examples of circumstantial evidence, including: suspicious timing, ambiguous oral or written statements, statistical evidence of disparate treatment, and passing over otherwise qualified candidates in hiring).

Dr. Bayless offers the alleged statements of Dr. May, made contemporaneously with the announcement of Dr. Bayless' removal from Division Chair, as direct evidence of age discrimination.  Specifically, Dr. Bayless contends that Dr. May stated, as one of his reasons for removing Dr. Bayless from the Chairmanship, that Dr. Bayless "had held the position for a long time-for eleven years."  (Bayless Aff., DE 23 at 3; May Decl., DE 19-3 at 5).  In addition, Dr. Bayless points to coetaneous statement made by Dr. May in regards to Dr. Bayless' time of service.  (May Decl., DE 19-3 at 5) ("I told Dr. Bayless . . . that I was appreciative of his lengthy service to the College").  Dr. Bayless suggests that these "timely" phrases "speak volumes" regarding Ancilla's discriminatory motives.

The Court disagrees.  Both the United States Supreme Court and the Seventh Circuit have held that employment decisions, allegedly made based upon length of service, are insufficient by themselves to establish a discriminatory motive.  *Hazen Paper Co.*, 507 U.S. at

611 ("Because age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily 'age based'"); *Testerman*, 98 F.3d at 302. Both Courts noted that length of service and age will often correlate. *Id.* However, both Courts additionally concluded that a Plaintiff must still establish that age actually motivated the adverse employment decision. *Hazen Paper Co.*, 507 U.S. at 611 ("When the employer's decision is wholly motivated by factors other than age, the problem of inaccurate and stigmatizing stereotypes disappears. This is true even if the motivating factor is correlated with age, as pension status typically is"); *Testerman*, 98 F.3d at 302 ("[Plaintiff's] failure lies not in any lack of connection between age and length of service, but in his inability to connect, even indirectly, length of service with discriminatory motive.").

Dr. Bayless did not provide any additional evidence or argument to explain how Dr. May's statements establish that Dr. May was "actually motivated" by discriminatory animus when he decided to remove Dr. Bayless from the Division Chair position. Instead, Dr. Bayless relies solely upon the statements themselves to "speak volumes" regarding Dr. May's alleged discriminatory motivation. *See* Bayless Response Brief, DE 22 at 14. Such allegations are contradicted by Dr. May's contention that he did not make the decision to remove Dr. Bayless from the Chairmanship based upon Dr. Bayless' age, but rather upon Dr. Maher's concerns and recommendation relating to Dr. Bayless' poor performance in the position. (May Decl., DE 19-3 at 5).

Given Dr. May's articulation of a non-discriminatory motive, the proffered ambiguous statements referencing Dr. Bayless' length of service can not, by themselves, establish that Dr. Bayless was removed from his position as Division Chair "but for" his age. *Gross*, 129 S.Ct. at 2350-52; *Hazen Paper Co.*, 507 U.S. at 611; *Martino*, 574 F.3d at 455; *Testerman*, 98 F.3d at

301. Simply put, because Dr. Bayless' relies solely on his subjective belief regarding the intent of Dr. May's statements, he cannot create a genuine issue of material fact regarding the cause of Dr. Bayless' removal from the Division Chair position. *Mills v. First Fed. Sav. & Loan Assoc. of Belvidere*, 83 F.3d 833, 841-42 (7th Cir. 1996) ("subjective beliefs of the plaintiff are insufficient to create a genuine issue of material fact"). This is particularly true in an ADEA case, where Dr. Bayless is required to prove that age was the "but for" motivation for the adverse employment action. *Gross*, 129 S.Ct. at 2350-52; *Hazen Paper Co.*, 507 U.S. at 611; *Martino*, 574 F.3d at 455; *Testerman*, 98 F.3d at 301.

Because Dr. Bayless did not provide any additional direct or circumstantial evidence of discriminatory motive for his removal as Division Chair,[1] the Court concludes that Dr. Bayless can not establish his ADEA claim under the direct method of proof. Instead, Dr. Bayless must attempt to establish his age discrimination claim under the indirect method of proof.

### 2. *Indirect Method*

Under the indirect method of proof, Dr. Bayless bears the initial burden of establishing a *prima facie* case of age discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973); *Testerman*, 98 F.3d at 302. To do so, Dr. Bayless must establish, by a preponderance of the evidence, that: (1) he is a member of a protected class; (2) he was meeting his employer's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than either a similarly situated employee, outside of his protected class

---

[1] Dr. Bayless did not present any direct or circumstantial evidence of discriminatory motive in regards to his non-reappointment as a professor. As such, Dr. Bayless also can not establish a *prima facie* case under the direct method of proof for this adverse employment action. Instead, this Court considers evidence relating to this adverse employment action under the indirect method of proof.

or a similarly-situated, "substantially younger" employee.[2]  *Martino*, 574 F.3d at 453; *Faas*, 532 F.3d at 641-42; *Tubergen*, 517 F.3d at 473; *Hemsworth*, 476 F.3d at 492.

a. Prima Facie Case

### I. Protected Class Member

Ancilla does not dispute that Dr. Bayless was within the protected class when he was removed from his position as Division Chair and when he received notice of non-reappointment as a professor at Ancilla.  Dr. Bayless was eighty-one years old at the time of each of these events.  (Bayless Dep., DE 19-2 at 5).   As such, the first prong of Dr. Bayless' *prima facie* case of age discrimination is satisfied, as he is within the protected class for purposes of the ADEA. 29 U.S.C. § 631(a).

### ii.  Material, Adverse Employment Action

As with the first element of Dr. Bayless' *prima facie* case, Ancilla does not significantly dispute that Dr. Bayless suffered adverse employment actions both when he was removed from his position as Division Chair and when he received notice of non-reappointment as a professor.[3]

---

[2]By way of introduction, this Court cites the general requirements for the fourth element of Dr. Bayless' *prima facie* case under the ADEA.  As will be discussed in greater detail at a later point in this order, however, this Court recognizes that some types of adverse employment actions require different factual showings under the fourth element and do not necessarily mandate a showing that the younger employee was similarly-situated.  *See e.g. Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 693-94 (7th Cir. 2000)(explaining the differences in analyses of the fourth element, under the ADEA, in cases involving a termination and replacement, a traditional reduction in force, and a mini-reduction in force).

[3] Ancilla argues that Dr. Bayless' removal as Division Chair did not amount to an adverse employment action.  *See* DE 18 at 7 n2.  However, as Ancilla acknowledges, Dr. Bayless' removal resulted in Dr. Bayless having increased teaching responsibilities.  *Id.*  Besides these conceded changes in Dr. Bayless' employment responsibilities, Dr. Bayless' loss of prestige, having previously held the position for eleven years, is additionally significant.  Taken together, the Court considers Dr. Bayless' removal to be an adverse employment action.  *See Crady v. Liberty Nat. Bank and Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993) (A materially adverse change might be indicated by . . . a demotion evidenced by a decrease in wage or salary, a less distinguished title, . . . significantly diminished material responsibilities, or other indices that might be unique to a particular situation.").

Adverse employment actions have been defined broadly in this Circuit and extend beyond readily quantifiable losses. *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996). That said, not everything that makes an employee unhappy is an actionable adverse action. *Id.* Only a severe or pervasive change in the daily conditions of employment may be treated as discriminatory. *Wash. v. Ill. Dept. of Revenue*, 420 F.3d 658, 660-61 (7th Cir. 2005). Consequently, in order to determine whether an adverse action is material, a court should consider the particular factual background of each situation. *Bryson v. Chi. State Univ.*, 96 F.3d 912, 916 (7th Cir. 1996). As conceded, Dr. Bayless' changes in employment is sufficiently material to constitute adverse employment actions and that, therefore, Dr. Bayless has also established the third prong of the *prima facie* case.

Where the parties disagree is whether Dr. Bayless can establish the remaining two elements of his *prima facie* case: that Dr. Bayless was meeting Ancilla's legitimate employment expectations at the time of his removal as Division Chair and at the time he received notice of non-reappointment as professor; and that other similarly-situated employees or substantially younger employees were afforded more favorable treatment than Dr. Bayless. The Court agrees with Ancilla that Dr. Bayless has not produced sufficient evidence to establish either of these elements.

### iii.  Legitimate Expectations

To meet the second element, Dr. Bayless must establish that he was performing his job to the employer's legitimate expectations at the time of the adverse employment action. *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 328-29 (7th Cir. 2002). Ancilla contends that Dr. Bayless was not meeting Ancilla's legitimate expectations for a number of reasons.

In regards to Dr. Bayless' removal as Division Chair, Ancilla notes that Dr. Maher met

14

with Dr. Bayless in early 2007 to discuss a number of concerns regarding Dr. Bayless' work performance. *See generally* Maher Decl., DE 19-14 at 5-8. At the meeting, Dr. Maher discussed complaints made by Ancilla students and staff regarding Dr. Maher's teaching methods and behavior. (Maher Decl., DE 19-14 at 5-6). Further, Dr. Maher discussed her own concerns regarding Dr. Bayless' performance as Division Chair. (Maher Decl., DE 19-14 at 6-8). In particular, Dr. Maher expressed her disagreement with the issues presented in Dr. Bayless' responses to her Division-review request; her frustration regarding Dr. Bayless' failure to offer support following the resignation of a Spanish instructor and failure to offer professional guidance to a new communications professor; her disappointment with Dr. Bayless' lack of critical constructive feedback in his faculty evaluations; and her concern regarding Dr. Bayless' failure to develop new programs, new teaching approaches, and new courses. (*Id.*). Soon after the meeting, Dr. Maher made a recommendation that new leadership was necessary in the Humanities Division, which, Dr. May contends was the basis for his decision to remove Dr. Bayless as Division Chair. (Maher Decl., DE 19-14 at 9; Maher Email, DE 19-17 at 2; May Decl., DE 19-3 at 5).

Dr. Bayless does not contest that Dr. Maher met with him and articulated numerous concerns regarding his performance. Nor does Dr. Bayless directly challenge any of the specific issues raised by Dr. Maher. Nevertheless, Dr. Bayless disputes that he was either a poor teacher or an ineffective Division Chair. In contrast, Dr. Bayless contends that he was, at all times, providing quality and effective teaching and asserts that, if given the opportunity at trial, he can present the testimony of Ancilla students to support the same. (Bayless Dep., DE 19-2 at 39). Dr. Bayless additionally points to an increase in his pay during the 2007-2008 academic year and Dr. May's recommendation that Dr. Bayless be granted Emeritus status as evidence that he was

meeting Ancilla's legitimate employment expectations at the time of his removal. (Ancilla Letter, DE 1-2 at 4; May Letter, DE 19-10 at 2). Regarding the latter, Dr. Bayless points to language cited from the Faculty Handbook that states the Emeritus rank may be recommended "after ten or more years of distinguished service to the college." (May Letter, DE 19-10 at 2; Faculty Handbook, DE 19-9 at 33).

Despite Dr. Bayless' blanket assertions that he was an effective teacher, Dr. Bayless does not dispute that, in early 2007, Dr. Maher discussed a number of performance issues with him and articulated her intention to recommend that Dr. Bayless be removed as Division Chair. In his response brief, Dr. Bayless does not refute any of Dr. Maher's multiple concerns and fails to offer any evidence that would undermine their purported legitimacy. As such, it is uncontested that Dr. Bayless was not meeting Ancilla's legitimate expectations, at least in regards to Dr. Maher's performance concerns. This alone is sufficient to prevent Dr. Bayless from establishing this requisite element of the *prima facie* case, at least in relation to his removal as Division Chair.

Indeed, the closest Dr. Bayless comes to refuting this evidence is his assertion, articulated exclusively in his Complaint, that, upon removal, Dr. May told Dr. Bayless that his removal as Division Chair was not performance related. (Complaint, DE 1-3 at 3; Response Brief, DE-22 at 4). However, evidencing one of the few factual dispute in this case, Dr. May asserts in his declaration that he never told Dr. Bayless that his reasons for removal were not performance related. (May Decl., De 19-3 at 5). Instead, Dr. May states that he told Dr. Bayless that he was acting upon the recommendation and performance concerns of Dr. Maher in making the decision to remove Dr. Bayless from the position. (May Decl., De 19-3 at 5).

Regardless of the parties' dispute over what Dr. May did or didn't say regarding

performance at the time of Dr. Bayless' removal, Dr. Bayless does not refute that Dr. May articulated his reliance upon the recommendation of Dr. Maher to justify his decision for Dr. Bayless' removal.  Further, as previously noted, Dr. Maher's articulated performance concerns are uncontested by Dr. Bayless.  As such, Dr. Bayless has failed to establish a triable issue of fact regarding whether Dr. May's decision to remove him as Division Chair was based upon something other than Dr. Bayless' poor performance.

Further, Dr. Bayless' perfunctory and self-serving statements that he was an effective teacher and Division chair are insufficient to create a factual issue on summary judgment. *Sirvidas v. Commonwealth Edison Co.*, 60 F.3d 375, 378 (7th Cir. 1995); *Williams v. Seniff*, 342 F.3d 774, 789 (7th Cir. 2003)("an employee's self-serving statements about his ability are insufficient to contradict an employer's negative assessment of that ability"); *Mills v. First Fed. Sav. & Loan Assoc. of Belvidere*, 83 F.3d 833, 841-42 (7th Cir. 1996); *Sakellarion v. Judge & Dolph, Ltd.*, 893 F.Supp. 800, 805 (N.D.Ill. 1995).  Noteworthy in this regard, all of Dr. Bayless' facts are presented in the form of his own affidavit and deposition testimony.  Such factual presentation, without more, can, at best, only serve as speculation of discrimination, which is insufficient to rebut a motion for summary judgment.  *Mills*, 83 F.3d at 841-42.  Speculation, conclusory allegations, and self-serving statements are not properly included in an affidavit supporting or opposing summary judgment and should be disregarded by the Court. *Brettler v. Purdue Univ.*, 408 F.Supp.2d 640, 664 n.12 (7th Cir. 2006); *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 932 (7th Cir. 1995) ("Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment").

Instead, it is imperative at the summary judgment stage that Dr. Bayless provide additional facts to support his assertions of discriminatory treatment. *Sirvidas*, 60 F.3d at 378;

*Williams*, 342 F.3d at 789; *Mills*, 83 F.3d at 841-42; *Sakellarion*, 893 F.Supp. at 805. Although Dr. Bayless asserts that he can present testimony at trial of Ancilla students to prove that he was an effective teacher, he has failed to provide such statements in response to Ancilla's motion for summary judgment. As a result, the Court can not give weight to Dr. Bayless' assertions because the Court cannot consider evidence that is not actually before it. *See Everroad v. Scott Truck Sys. Inc.*, 604 F.3d 471, 476 (7th Cir. 2010) ("It is a strange and unwise strategy for a party to advise a court that it has relevant evidence without actually submitting the evidence. Summary judgment proceeding provide the 'put up or shut up' moment in litigation"); *Forsythe v. Ticor Title Ins. Co.*, 2010 WL 2669801, *7 (N.D. Ind. 2010).

Finally, Dr. Bayless' evidence regarding his pay raise and Emeritus status is also insufficient to establish that he was meeting Ancilla's legitimate expectations at the time of his removal as Division Chair. Dr. Bayless' asserts that his salary was increased, as part of Ancilla's March 8, 2007 letter of reappointment, and argues that the "raise" evidences that he was performing satisfactorily at the time of his removal as Division Chair, earlier the same day. (Ancilla Letter, DE 1-2 at 4). Despite Dr. Bayless' characterization, the letter is silent regarding merit, *see* Ancilla Letter, DE 1-2 at 4, and can not, therefore, establish that Dr. Bayless was meeting Ancilla's legitimate expectations at the time of his removal from the Chairmanship. *See Daigree v. City of Harvey*, 2009 WL 2371727, *5 (N.D.Ill. 2009); *Stinneford v. Spiegel Inc.*, 845 F.Supp. 1243, 1249 (N.D.Ill. 1994).

Similarly, Dr. Bayless contends that Dr. May's recommendation that he be granted Emeritus status is evidence that he was performing his Division Chair duties satisfactorily. However, Dr. May's recommendation for Emeritus status came nearly four months after Dr. Bayless was removed as Division Chair. As such, the purported relevance of Dr. May's

recommendation, made in June 2007, is severely limited in regards to Dr. May's decision in March 2007 to remove Dr. Bayless from the Chairmanship.

Further, even assuming that it is relevant, Ancilla explains that Emeritus status is honorary for retiring professors and is not delineated as a performance award in the Faculty Handbook.  (May Letter, DE 19-10 at 2; Faculty Handbook, DE 19-9 at 33-34).  Persuasive in this regard is the language in May's letter, cited directly from the Faculty Handbook, which states that the Emeritus rank is offered to professors "who have limited or have terminated their responsibilities as a ranked faculty member." (May Letter, DE 19-10 at 2; Faculty Handbook, DE 19-9 at 33-34).  In addition, lending further credibility to Ancilla's explanation is the fact that Dr. Bayless received notification of the recommendation to Emeritus status in the same letter that he received notification of non-reappointment.  (May Letter, DE 19-10 at 2).  Without additional evidence to establish that granting Emeritus status was actually performance based, the Court concludes that the recommendation is insufficient to create a triable fact regarding Ancilla's legitimate expectations in relation to Dr. Bayless' removal as Division Chair.

Although Dr. Bayless may have considered himself to have been meeting Ancilla's expectations, it is clear from Dr. Maher's uncontested testimony that Dr. Bayless was not.  For the purposes of this element, it is not Dr. Bayless' perception of his performance that is relevant but rather Ancilla's.  *See Andrews v. College Bd.*, 2001 WL 1000724 at *8 (N.D. Ill. 2001) ("Courts in this circuit have repeatedly found that an employee's own perception of her performance is insufficient, and does not constitute affirmative evidence which may defeat a motion for summary judgment. The relevant perception is that of the decisionmaker").  As such, Dr. Bayless can not establish that he was meeting Ancilla's legitimate expectations at the time of his removal as Division Chair.

In regards to Dr. Bayless' non-reappointment as professor, Ancilla contends that Dr. Bayless' position was eliminated due to financial considerations and consistently low enrollment in Dr. Bayless' classes. (May Decl., DE 19-3 at 7-8). Specifically, Ancilla notes that budgetary decisions and declining enrollment dictated the elimination of three faculty and three staff positions at Ancilla. (May Decl., DE 19-3 at 6-7). To this end, Dr. May asserts that, in order to stem financial losses, he decided to eliminate the three faculty who consistently had the lowest class enrollment, Dr. Bayless being one of them. (May Decl., DE 19-3 at 7-8). As such, Ancilla contends that, at the time of Dr. Bayless' non-reappointment, Dr. Bayless was not meeting its legitimate expectations regarding higher class enrollment.

In response, Dr. Bayless contends that reasons other than finances motivated Ancilla's decision not to reappoint him as professor. In support, Dr. Bayless asserts that his small class sizes were due to his "high standards" and contends that, in a Fall 2006 meeting, Dr. May sanctioned Dr. Bayless' continued application of such standards, even in the face of declining enrollment. (May Decl. 19-3 at 3-4; Bayless Aff., DE 23 at 2). In addition, Dr. Bayless again cites Dr. May's recommendation that Dr. Bayless be granted Emeritus status as proof that he was performing his teaching duties satisfactorily. Given such evidence, Dr. Bayless infers that a discriminatory purpose was the more likely reason for Ancilla's decision not to reappoint him as professor.

The Court notes that Dr. Bayless does not dispute that enrollment in his classes was down, ultimately resulting in the cancellation of at least one of his classes. (May Decl. 19-3 at 3-4; Bayless Aff., DE 23 at 2). In addition, Dr. Bayless does not dispute the fact that Ancilla was under considerable financial strain when it made the decision to eliminate several faculty and staff positions. Nor does Dr. Bayless contest the fact that Ancilla cut the three faculty positions

with the lowest enrollments, his own included. As such, regardless of Dr. Bayless'
circumstantial evidence to the contrary, the Court considers there to be significant uncontested
evidence to support Ancilla's contention that Dr. Bayless was not meeting Ancilla's legitimate
expectations regarding class enrollment at the time of his non-reappointment.

Next, as to Dr. Bayless' contentions regarding the Fall 2006 meeting and his discussion
with Dr. May about not wanting to lower his high teaching standards, it is dubious whether Dr.
May sanctioned Dr. Bayless' low enrollment by encouraging him to maintain his high standards.
Indeed, both parties assert that Dr. May never guaranteed that low enrollment would not result in
Dr. Bayless' classes being cut. Instead, Dr. Bayless does not contest that, simultaneous with Dr.
May's statements about maintaining high standards, Dr. May also stated that the decision to
eliminate classes due to low enrollment was a decision to be made between Dr. Maher and Dr.
Bayless. At the time of their initial meeting it was too early to decide whether to make those
cuts. (May Decl., DE 19-3 at 3-4; Bayless Aff., DE 23 at 2). As such, even considering the fact
that Dr. May encouraged Dr. Bayless not to abandon his rigorous standards, that fact does not
establish that Dr. May additionally sanctioned continued low class enrollment.

Even more persuasive in this regard, the Fall 2006 meeting in which Dr. Bayless
discussed his desire to maintain high standards in the face of declining enrollment was held
almost nine months prior to Ancilla's decision not to reappoint Dr. Bayless as a full-time
professor. (May Decl., DE 19-3 at 3-4, 7). In the interim, Dr. Bayless does not dispute that
Ancilla made significant budgetary and financial decisions due to declining enrollment,
ultimately determining that it was necessary to eliminate several faculty positions. (May Decl.,
DE 19-3 at 6-7). Due to these abrupt and intervening budgetary changes, Ancilla contends that it
later decided to eliminate Dr. Bayless' position because of consistently low enrollment in his

classes. (May Decl., DE 19-3 at 6-8). Given the extensive length of time between the Fall 2006 meeting and Ancilla's June 2007 decision not to reappoint Dr. Bayless, and the changing financial circumstances occurring in the interim, the Court considers the Fall 2006 meeting regarding Dr. Bayless' "high standards" to be insufficient to establish that Dr. Bayless was meeting Ancilla's legitimate expectations at the time he was not-reappointed in June 2007. *See Cengr. v. Fusibond Piping Systems*, Inc., 135 F.3d 445, 452-53 (7th Cir. 1998) ("what matters is whether plaintiff was meeting his employer's expectations at the time of his discharge"); *Cooper v. Indianapolis Water Co.*, 2007 WL 4261927, *8 (S.D. Ind. 2007).

Finally, the Court has already concluded that Dr. Bayless has failed to present sufficient evidence to establish that the rank of Professor Emeritus at Ancilla is a performance-based rank. Without more, Dr. Bayless' argument that the rank is evidence that he was meeting Ancilla's legitimate expectations at the time of his non-reappointment is unsupported. Instead, the undisputed evidence reveals that, due to budget constraints, Ancilla decided to cut the three lowest performing professors in terms of class enrollment. Dr. Bayless' position was one of them. As a consequence, even assuming the Emeritus rank was performance-based, as Dr. Bayless suggests, Dr. Bayless has still failed to establish a triable fact that he was meeting Ancilla's legitimate expectations regarding class enrollment at the time of his non-reappointment.

As a result, Dr. Bayless can also not establish that he was meeting Ancilla's legitimate expectations at the time of his non-reappointment as professor. Consequently, because Dr. Bayless can not establish that he was meeting his employer's legitimate employment expectations, in regards to either adverse employment action, the Court concludes that Dr. Bayless cannot establish a *prima facie* case of age discrimination under the indirect method of

proof.

*iv. Treatment of Similarly-Situated Employees*

In addition, Dr. Bayless can also not establish a *prima facie* case because he has failed to present sufficient evidence of either a similarly-situated employee, outside of his protected class or a similarly-situated, "substantially younger" employee who was treated more favorably than he was at the time of his replacement as Division Chair. Further, Dr. Bayless has failed to show that either an employee outside of his protected class or a "substantially younger" employee absorbed his duties as professor. Because the analysis of this fourth factor of the *prima facie* case is slightly different for each of Dr. Bayless' adverse employment actions, the analysis of each will be addressed separately.

I). Comparator evidence relating to removal as Division Chair.

In regards to his removal as Division Chair, to establish the fourth element of the *prima facie* case, Dr. Bayless must establish by a preponderance of the evidence that he was treated less favorably than either a similarly-situated, employee outside of his protected class or a similarly-situated, "substantially younger" employee. *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 641-42 (7th Cir. 2008); *Yee v. UBS O'Connor, LLC*, 2010 WL 1640192, **23-24 (N.D.Ill. 2010) ("the issue [in relation to the fourth element] is whether [the plaintiff's] replacements had better qualifications or performance records than [the plaintiff]"); *Miller v. Adminastar Fed. Inc.*, 179 Fed.Appx. 967, 969 (7th Cir. 2006) (unpublished opinion); *Miller v. Adminastar Fed. Inc.*, 2005 WL 1071036 * 5 (S.D.Ind. 2005); *Denisi v. Dominick's Finer Foods, Inc.*, 99 F.3d 860, 864 (7th Cir. 1996). *See also Blakely v. Brach & Brock Confections, Inc.*, 59 Fed.Appx. 844, 847 (7th Cir. 2003)(unpublished opinion dealing with race discrimination under Title VII and § 1981).

Under this approach, Dr. Bayless must proffer a similarly-situated, younger employee[4] who has a "comparable set of failings" as Dr. Bayless but was treated more favorably. *Id. See also Young v. Digger Specialties, Inc.*, 2010 WL 3940455, *5 (N.D. Ind. 2010) (similarly-situated employee must be "comparable in all material respects," reporting to the same supervisor, subject to the same standards and rule, and engaging in similar conduct without being subject to the same level of discipline); *Schmidt v. R. Lavin and Sons, Inc.*, 2001 WL 290362 *5 (N.D.Ill. 2001) (providing an example analysis of similarly-situated evidence in an ADEA reduction in force case).

The Court's analysis of this element, in relation to Dr. Bayless' removal as Division Chair, follows *Faas*, an ADEA case involving an employee's termination due to poor performance. *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 641-43 (7th Cir. 2008). In *Faas*, the Seventh Circuit followed a traditional *McDonnell Douglass* framework when analyzing this fourth element of a *prima facie* case, faulting a plaintiff for failing to present evidence of similarly-situated employees who were also cited for poor performance but not disciplined in the same manner as the plaintiff. *Id. Faas'* approach to the fourth element, finds numerous other examples within the Circuit. *See e.g Yee v. UBS O'Connor, LLC*, 2010 WL 1640192, **23-24 (N.D.Ill. 2010) ("the issue [in relation to the fourth element] is whether [the plaintiff's] replacements had better qualifications or performance records than [the plaintiff]"); *Miller v. Adminastar Fed. Inc.*, 179 Fed.Appx. 967, 969 (7th Cir. 2006) (unpublished opinion); *Miller v. Adminastar Fed. Inc.*, 2005 WL 1071036 * 5 (S.D.Ind. 2005); *Denisi v. Dominick's Finer*

---

[4]Dr. Bayless can present evidence of a similarly-situated employee under the age of forty or evidence of a similarly-situated employee who is over the age of forty but at least ten years younger than himself ("substantially younger"). *See Martino v. MCI Commc'ns Servs. Inc.*, 574 F.3d 447, 453 (7th Cir. 2009); *Tubergen v. St. Vincent Hosp. and Health Care Ctr., Inc.*, 517 F.3d 470, 475 n4 (7th Cir. 2008); *Yee v. UBS O'Connor, LLC*, 2010 WL 1640192, *18 (N.D.Ill. 2010).

*Foods, Inc.*, 99 F.3d 860, 864 (7th Cir. 1996). Given the similar facts and circumstances surrounding Dr. Bayless' removal as Division Chair, the Court considers its analysis of this element to be appropriately made under *Faas*. As such, Dr. Bayless has failed to establish the fourth element of his *prima facie* case in regards to his removal as Division Chair.[5]

Dr. Bayless presents evidence that he was replaced as Division Chair by Professor Roba Kribs ("Professor Kribs"). Although Professor Kribs was sixty years old at the time that she replaced Dr. Bayless, the Court considers Professor Kribs to be "substantially younger" than Dr. Bayless, who was eighty-one years old at that time. (May Decl., DE 19-3 at 6-7; Bayless Dep., 19-2 at 5). To be considered substantially younger for purposes of the ADEA, younger employees need not be under the age of forty but must, instead, be at least ten years younger than Dr. Bayless. *Martino v. MCI Commc'ns Servs. Inc.*, 574 F.3d 447, 454 (7th Cir. 2009); *Tubergen*, 517 F.3d at 475 n.4; *Yee v. UBS O'Connor, LLC*, 2010 WL 1640192, *18 (N.D.Ill. 2010); *Hamilton v. Nat'l Propane*, 276 F.Supp.2d 934, 944-46 (W.D.Wis. 2002). Because Professor Kribs was more than ten years younger than Dr. Bayless at the time of his removal, the

_____

[5] Nevertheless, the Court is aware of some alternative precedent in the Circuit, in which the fourth element of a *prima facie* case can be established simply by showing that the terminated employee was replaced by a employee outside the protected class or by a substantially younger employee. *Olson v. Northern FS, Inc.*, 387 F.3d 632 (7th Cir. 2004)(ADEA case); *Robin v. Espo Engineering Corp.*, 200 F.3d 1081, 1090 (7th Cir. 2000)(ADA case). Acknowledging the outlier nature of *Olson*, the Seventh Circuit later distinguished the *Olson* ruling as having not modified the requirement that the plaintiff show that the younger, replacement employee also lacked the same credentials. *See Miller v. Adminastar Fed. Inc.*, 179 Fed.Appx. 967, 969 (7th Cir. 2006) (unpublished opinion) ("*Olson* is distinguishable, however, because there the plaintiff established a fact issue as to whether 'age was a motivating factor in the decision to fire him.' Olson presented evidence that his younger replacement was under-qualified and that his employer explicitly stated that Olson was undesirable because of his age."). *See also Miller v. Adminastar Fed. Inc.*, 2005 WL 1071036 * 5 (S.D.Ind. 2005) (distinguishing *Olson* as not having application in "disparate discipline cases"). Given this later clarification by the Circuit and the numerous cases that evaluate this element under the *Faas* approach, the Court considers the appropriate analysis of this element to be made pursuant to *Faas* rather than *Olson*.

Regardless, whether the Court proceeds under an analysis similar to *Faas* or *Olson*, the outcome in this case is the same. That is, even assuming that Dr. Bayless could establish the fourth element of his *prima facie* case, Dr. Bayless still cannot establish either that he was meeting Ancilla's legitimate expectations at the time of his removal as Division Chair or that Ancilla's stated reasons for his removal are pretextual.

Court considers Professor Kribs to be substantially younger.

Nevertheless, Dr. Bayless fails to factually demonstrate that Dr. Kribs had a "comparable set of failings" at the time she replaced Dr. Bayless as Division Chair. *See Faas*, 532 F.3d at 642 (plaintiff must proffer a younger employee who has a "comparable set of failings" as himself but was treated more favorably). Dr. Bayless asserts that Dr. Kribs had larger class enrollments because she was not applying the same "high-standards" but was, instead, giving her students higher average grades than Dr. Bayless. (Complaint, DE 1 at 3; Bayless Aff., DE 23 at 3). Dr. Maher contests this assertion, however, stating that Professor Kribs had higher class enrollment, despite providing more failing grades to her students than Dr. Bayless in three out of four semesters. (May Decl., DE 19-3 at 4). Regardless of the parties' factual dispute regarding Professor Kribs' enrollment, Dr. Bayless' assertion, even if taken as true, does nothing to establish that Professor Kribs was similarly-situated to Dr. Bayless.

In particular, Ancilla asserts that it removed Dr. Bayless as Division Chair for the specific performance reasons raised by Dr. Maher; none of which include concerns regarding low class enrollment. (May Decl., DE 19-3 at 5; Maher Decl., DE 19-14 at 5-8). As such, that Professor Kribs may have had higher class enrollment is irrelevant to establish that she had comparable failings as Dr. Bayless or was, otherwise, similarly-situated. *Hiatt v. Rockwell Int'l Corp.*, 26 F.3d 761, 771 (7th Cir. 1994) ("Incomplete or arbitrary comparisons reveal nothing concerning discrimination."). Instead, Dr. Bayless offers absolutely no evidence that Professor Kribs had similar performance issues as those articulated by Dr. Maher in regards to Dr. Bayless. Consequently, Dr. Bayless has failed to establish that Professor Kribs was similarly-situated to him. *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 642-43 (7th Cir. 2008) (a terminated plaintiff had an "idiosyncratic set of failings" that distinguished her from other non-disciplined

employees with similar job responsibilities; and, therefore, the plaintiff could not establish the fourth element of her ADEA *prima facie* case). *See also Dandy v. United Parcel Service, Inc.*, 388 F.3d 263, 274 (7th Cir. 2004) (stating that plaintiff must establish that he is similarly-situated to other employees by presenting evidence of similar attributes and a cogent analysis); *Senske v. Sybase Inc.*, 588 F.3d 501, 510 (7th Cir. 2009) ("Although the similarly situated concept is a flexible one, the comparators must be similar enough that differences in their treatment cannot be explained by other variables, such as distinctions in their roles or performance histories.").

Because Dr. Bayless' evidence regarding Professor Kribs is insufficient to establish that she shared a "comparable set of failings" as Dr. Bayless, and because Dr. Bayless presented no other evidence regarding other similarly-situated younger employees, the Court concludes that Dr. Bayless can not establish the fourth element of a *prima facie* case in regards to his removal as Division Chair.

II).  Comparator evidence relating to non-reappointment as professor.

Similarly, in relation to Dr. Bayless' non-reappointment as professor, the Court finds similar deficiencies regarding Dr. Bayless' ability to establish this element. Dr. May asserts, and Dr. Bayless does not contest, that Dr. Bayless' position was eliminated as part of budgetary cuts and has not been filled since his non-reappointment.  (May Decl., 19-3 at 9).  Instead, Dr. May asserts that Dr. Bayless' duties were absorbed by other employees.  (May Decl., 19-3 at 9). Given such factual circumstances, Dr. Bayless' non-reappointment as professor is tantamount to a mini-reduction in force, and Dr. Bayless can, therefore, establish the fourth element by showing that his job duties were absorbed by either a younger employee not in the protected class or by a substantially younger employee. *Hemsworth, II v. Quotesmith*, 476 F.3d 487, 492

(7th Cir. 2007); *Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 690-91 (7th Cir. 2006); *Michas v. Health Cost Controls of Illinois, Inc.*, 209 F.3d 687, 693-94 (7th Cir. 2000); *Hamilton v. Nat'l Propane*, 276 F.Supp.2d at 944-46 (W.D.Wis. 2002).

A traditional reduction in force ("RIF") occurs when an employer decides to permanently eliminate multiple positions from its workforce, allegedly for economic reasons. *Bellaver v. Quanex Corp.*, 200 F.3d 485, 494 (7th Cir. 2000); *Michas v. Health Cost Controls of Illinois, Inc.*, 209 F.3d 687, 693 (7th Cir. 2000). *Contrast Blakely v. Brach & Brock Confections, Inc.*, 59 Fed.Appx. 844, 847 (7th Cir. 2003)(unpublished opinion) (distinguishing an RIF case, in which a position is eliminated entirely, from a case involving a termination and replacement based upon performance issues). In an RIF case, a plaintiff must make a factual showing that similarly-situated employees, not in the protected class, were treated better than the terminated plaintiff. *Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 691 n1 (7th Cir. 2006); *Michas v. Health Cost Controls of Illinois, Inc.*, 209 F.3d 687, 693 (7th Cir. 2000); *Schmidt v. R. Lavin and Sons, Inc.*, 2001 WL 290362 *5 (N.D.Ill. 2001).

In contrast, a mini-reduction in force ("mini-RIF") occurs when a single employee is terminated, allegedly for financial reasons, and the employee's duties are absorbed by other, remaining employees. *Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 690 (7th Cir. 2006); *Michas v. Health Cost Controls of Illinois, Inc.*, 209 F.3d 687, 693 (7th Cir. 2000); *Hamilton v. Nat'l Propane*, 276 F.Supp.2d 934, 944-45 (W.D.Wis. 2002); *Bellaver v. Quanex*, 200 F.3d 485, 495 (7th Cir. 2000) ("The point of the mini-RIF, unlike a true RIF, is that the job really was not eliminated at all; because the fired employee's duties were absorbed by others, they were effectively "replaced" not eliminated.") Unlike a RIF case, a plaintiff in a mini-RIF case need not make a factual showing that similarly-situated employees were treated better because the

28

inference of discrimination arises from the fact that they were outside of the protected class. *Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 690 (7th Cir. 2006); *Michas v. Health Cost Controls of Illinois, Inc.*, 209 F.3d 687, 693 (7th Cir. 2000); *Bellaver v. Quanex*, 200 F.3d 485, 495 (7th Cir. 2000); *Hamilton v. Nat'l Propane*, 276 F.Supp.2d 934, 945 (W.D.Wis. 2002). Instead, the plaintiff need only show that his job duties were absorbed by an employee outside the protected class or that his job duties were absorbed by an employee within the protected class but who is substantially younger than the plaintiff. *Hemsworth, II v. Quotesmith.com, Inc.*, 476 F.3d 487, 492 (7th Cir. 2007); *Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 690-91 (7th Cir. 2006); *Michas v. Health Cost Controls of Illinois, Inc.*, 209 F.3d 687, 693 (7th Cir. 2000); *Hamilton v. Nat'l Propane*, 276 F.Supp.2d 934, 945-46 (W.D.Wis. 2002) (noting that the plaintiff must additionally show that a younger employee *mostly* absorbed the terminated plaintiff's job duties, in terms of proportional comparison to other employees within the protected class who also absorbed some of the job duties).

The relevant distinction between an RIF and a mini-RIF appears to be whether the terminated employee's job duties were reabsorbed and not the number of employees that were terminated. *See Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 691 n1 (7th Cir. 2006) (a case in which the Court considered it appropriate, in a situation where multiple individuals were laid off for alleged economic reasons and their duties were absorbed by other workers, to utilize a mini-RIF analysis rather than a RIF analysis); *Paluk v. Gooding Rubber Co.*, 221 F.3d 1003, 1012 n5 (7th Cir. 2000) ("For purposes of deciding the proper prima facie case requirements to apply, our inquiry is dependent not on the number of employees terminated, but 'on whether the [the employer] still needed [the plaintiff's] job responsibilities to be performed.' Thus, when a particular employee's duties still were performed by employees of the company, as they were

here, the reduction in force prima facie case standard is inappropriate even if the company terminated numerous employees."); *Michas v. Health Cost Controls of Illinois, Inc.*, 209 F.3d 687, 693-94 (7th Cir. 2000) ("[I]n the mini-RIF scenario, the position is absorbed by other employees; in the RIF context, the employer no longer needs the discharged employee's duties performed. Thus, our decision whether an action is an RIF depends on whether [the employer] still needed [the plaintiff's] job responsibilities performed."). *But see Schmidt v. R. Lavin and Sons, Inc.*, 2001 WL 290362 *5 (N.D.Ill. 2001) (considering the relevant distinction between an RIF and a mini-RIF to be the number of employees affected rather than whether the terminated employees duties were absorbed by non-terminated employees).

The Court considers Dr. Bayless' non-reappointment as professor to be akin to a mini-RIF case and conducts it analysis accordingly.[6] Dr. Maher's declaration establishes that Dr. Bayless and two other Ancilla professors were terminated due to low class enrollment, pursuant to Ancilla's cost-saving, budgetary decisions. *See* DE 19-3 at 6-8. Dr. Maher's declaration also establishes that Dr. Bayless' teaching responsibilities were absorbed by other Ancilla professors. *See* DE 19-3 at 9. Consequently, because there is evidence in the record that Dr. Bayless' job duties were absorbed rather than eliminated entirely, the Court considers it appropriate to proceed under a mini-RIF analysis. Under this analysis, which is arguably easier than that of an RIF analysis, Dr. Bayless has failed to present any evidence that the persons who absorbed his job duties were substantially younger or outside of the protected class. As a result, Dr. Bayless

---

[6] Nevertheless, even if Dr. Bayless non-reappointment as professor were considered to be more properly analyzed as a traditional RIF case, Dr. Bayless has still failed to present sufficient evidence to establish the fourth element of his *prima facie* case. Specifically, to establish the fourth element under the RIF analysis, Dr. Bayless would need to present evidence of a substantially younger professor or a professor under the age of forty who also had low class enrollment but was not terminated as a professor at Ancilla. *See Michas v. Health Cost Controls of Illinois, Inc.*, 209 F.3d 687, 693-94 (7th Cir. 2000). Dr. Bayless presents absolutely no evidence of this type and, therefore, also can not establish the fourth element under an alternative RIF analysis.

can not establish this element of his *prima facie* case.

Dr. Bayless has offered no evidence to show that a younger employee outside the protected class or that a substantially younger employee absorbed Dr. Bayless' teaching duties. Although Dr. May acknowledges that Dr. Bayless' duties were absorbed by other employees, Dr. Bayless presents no evidence to either identify those employees or to reveal their ages for purposes of making an age comparison with Dr. Bayless. (May Decl., 19-3 at 9). As such, the Court concludes that Dr. Bayless can also not establish the fourth element of a *prima facie* case in regards to his removal as Division Chair.

Consequently, in addition to failing to factually establish that he was meeting Ancilla's legitimate employment expectations, Dr. Bayless has also failed to present sufficient comparator evidence to establish a *prima facie* case of age discrimination in relation to either of the adverse employment actions taken against him.

Having, therefore, determined that Dr. Bayless cannot establish a *prima facie* case of age discrimination, the Court's analysis regarding Dr. Bayless' ADEA claim could reasonably stop here. However, even assuming that Dr. Bayless could establish that he was meeting Ancilla's legitimate employment expectations and that others outside his protected class were treated more favorably than himself, and, therefore, a *prima facie* case, the Court further concludes that Ancilla is still entitled to summary judgment because Ancilla has offered a non-invidious explanation for its actions and Dr. Bayless has presented insufficient evidence to show that the proffered reason is merely pretextual.

b. Non-Discriminatory Justification

Once the Plaintiff establishes a *prima facie* case, the burden of production shifts to the Defendant to articulate a legitimate, non-discriminatory justification for its action. *Martino v.*

*MCI Commc'ns Servs. Inc.*, 574 F.3d 447, 453 (7th Cir. 2009); *Testerman v. EDS Technical Products Corp.*, 98 F.3d 297, 302 (7th Cir. 1996); *Yee*, 2010 WL 1640192 at *18; *Hamilton*, 276 F.Supp.2d at 946 (W.D.Wis. 2002) ("burden is one of production, not persuasion").  As previously discussed, Ancilla claims that it removed Dr. Bayless from his position as Division Chair due to the performance issues raised by Dr. Maher.  In addition, Ancilla asserts that it did not reappoint Dr. Bayless as professor due to budget cuts and low enrollment in Dr. Bayless' classes.

c.  Evidence that Ancilla' Proffered Justification is Pretextual

Once, as here, Ancilla has offered a non-discriminatory justification, the burden shifts back to Dr. Bayless to present sufficient rebuttal evidence to create a triable issue concerning whether the Defendant's proffered reason is merely pretextual.  *Martino*, 574 F.3d at 453; *Testerman*, 98 F.3d at 302-03 (plaintiff "must prove by a preponderance of the evidence that the legitimate reasons offered by the Defendant were not its true reasons"); *Yee*, 2010 WL 1640192 at *18.  Dr. Bayless can demonstrate that Ancilla's explanation is pretextual by showing that Ancilla's explanation is "unworthy of credence." *Faas*, 532 F.3d at 642; *Hamilton*, 276 F.Supp.2d at 947.  "Pretext means a dishonest explanation, a lie rather than an oddity or an error." *Faas*, 532 F.3d at 642, *Gates v. Caterpillar*, 513 F.3d 680, 691 (7th Cir. 2008). Accordingly, the question is not whether Ancilla's proffered explanation was "well-reasoned, wise or accurate." *See Ptasznick v. St. Joseph Hosp.,* 464 F.3d 691, 696 (7th Cir. 2006); *Gates*, 513 F.3d 691; *Pittman v. Hous. Auth. of City of South Bend, Ind.*, 695 F.Supp.2d 866, 875 (N.D.Ind. 2010); *Sikora v. Honeywell Int'l, Inc.*, 2008 WL 2756258 *9 (N.D.Ind. 2008).  *See also Martino*, 574 F.3d at 454 (quoting *Testerman*, 98 F.3d at 304) ("what is at issue is not the wisdom of an employer's decision, but the genuineness of the employer's motives"); *Luks v.*

*Baxter Healthcare Corp.*, 467 F.3d 1049, 1056 (7th Cir. 2006) ("the relevant question is not whether the criticisms of his performance were right or wrong but whether his supervisor honestly believed them"); *Hamilton*, 276 F.Supp.2d at 947 ("a court will not evaluate whether the employer made a mistake or a bad decision but 'whether the employer honestly believes in the reasons it offers.'"). Rather, the inquiry focuses on whether the employer's reason is "honest." *Id.*

Dr. Bayless contends that numerous pieces of evidence suggest that Ancilla's stated reasons are pretextual and that Ancilla was more likely motivated by a discriminatory animus. In support, Dr. Bayless references: Dr. May's statements regarding Dr. Bayless' length of service; Dr. Bayless' pay increase; Dr. May's recommendation that Dr. Bayless be granted Emeritus status; and Dr. Bayless' replacement as Division Chair by a substantially younger, although sixty-one year old, professor.

Dr. Bayless does not directly challenge the authenticity of either of Ancilla's stated justifications for its actions, both of which the Court has already found to be factually supported and uncontested. Specifically, as discussed previously, Dr. Bayless provided no evidence to dispute the specific performance issues raised by Dr. Maher in relation to Dr. Bayless' performance as Division Chair, and Dr. Bayless did not dispute that Ancilla was under significant financial strain at the time it made the decision to eliminate his position. Instead, Dr. Bayless relies on his unique interpretation of unconnected facts to infer that Ancilla was actually motivated by an invidious purpose. However, as already discussed, because Dr. Bayless' contentions are supported by only his own speculation, his arguments are insufficient to establish that Ancilla's reasons were pretextual. *Mills v. First Fed. Sav. & Loan Assoc. of Belvidere*, 83 F.3d 833, 841-42 (7th Cir. 1996) ("the subjective beliefs of the plaintiff are insufficient to create

a genuine issue of material fact."); *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 932 (7th Cir. 1995) ("Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment").

Instead, given the large amount of uncontested evidence in support of Ancilla's proffered explanations and Dr. Bayless' comparatively thin rebuttal, Dr. Bayless has failed to establish that Ancilla's justifications are pretextual. As a result, Dr. Bayless also can not establish a case of discrimination under the indirect method of proof. Consequently, the Court concludes that Ancilla is entitled to summary judgment on Dr. Bayless' ADEA claim.

## C. Dr. Bayless' Retaliation Claim

Dr. Bayless additionally asserts a retaliation claim against Ancilla. As Ancilla points out, however, Dr. Bayless plead his retaliation claim under Title VII in both his EEOC charge and Complaint. (DE 1 at 5 and DE 1-2 at 3). As such, Ancilla contends that Dr. Bayless' retaliation claim is unsustainable, as plead, because Dr. Bayless' underlying claim is asserted under the ADEA and not Title VII. (DE 1 at 5 and DE 1-2 at 3).

Under Title VII, it is unlawful for any employer to discriminate against an employee for "oppos[ing] any practice made an unlawful employment practice by [the Act], or because he has made a charge . . . under [the Act]. 42 U.S.C. § 2000e-3(a). More simply put, "[a]n employer may not retaliate against an employee who has complained about discrimination or other employment practices that violate Title VII." *Racicot v. Wal-Mart Stores, Inc.,* 414 F.3d 675, 678 (7th Cir. 2005). *See also Metzger v. Ill. State Police*, 519 F.3d 677, 681 (7th Cir. 2008). The specific practices made unlawful under Title VII are discrimination based on religion, sex, or nation origin. 42 U.S.C. § 2000e-3(b). As noted by Ancilla, age discrimination is not a proscribed action under Title VII. As such, the Court agrees that Dr. Bayless' retaliation claim

as plead under Title VII is not sustainable.

This fact alone is sufficient to grant summary judgment on Dr. Bayless' retaliation claim. In addition, the Court is reluctant to construe Dr. Bayless' retaliation claim as actually asserted under the ADEA, based on the rule that a plaintiff generally cannot assert claims in a civil lawsuit that he did not include in his EEOC charge of discrimination. *See Cheek v. Western & Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). This rule functions to give the EEOC, as well as the employer, the opportunity to investigate the claim and possibly come to a resolution prior to engaging in litigation. *Cheek*, 31 F.3d at 500; *Harper v. Godfrey Co.*, 45 F.3d 143, 148 (7th Cir. 1995).

However, even if this Court were to consider Dr. Bayless' retaliation claim as properly plead under the ADEA, Dr. Bayless would still not be able to survive summary judgment on the claim because he has failed to present sufficient evidence to establish either that he engaged in statutorily protected activity or that he suffered a materially adverse employment action subsequent to his participation in the activity.[7]

As with Dr. Bayless' ADEA discrimination claim, Dr. Bayless may proceed under either a direct or indirect method of proof to establish his claim for retaliation. *Guinto v. Exelon Generation Co., LLC,* 341 Fed.Appx. 240, 248 (7th Cir. 2009)(unpublished opinion); *Metzger v. Ill. State Police*, 519 F.3d 677, 681 (7th Cir. 2008); *Kodl v. Bd. of Educ. Sch. Dist. 45, Villa Park*, 490 F.3d 558, 562 (7th Cir. 2007); *Allen v. Fort Wayne Foundry Corp.*, 614 F.Supp.2d

---

[7]This Court notes that the analysis for a retaliation claim is the same under both Title VII and the ADEA. *See* 29 U.S.C. § 623(d) (using nearly identical language to that under Title VII, the ADEA makes it unlawful for any employer to discriminate against an employee for "oppos[ing] any practice made unlawful by [the Act], or because such individual has made a charge . . . under [the Act]."). *Compare Allen v. Fort Wayne Foundry Corp.*, 614 F.Supp.2d 943, 957 (N.D.Ind. 2009)(evaluating retaliation under ADEA); *Metzger v. Ill. State Police*, 519 F.3d 677, 681 (7th Cir. 2008)(evaluating retaliation under Title VII).  *See also Kodl v. Bd. of Educ. Sch. Dist. 45, Villa Park*, 490 F.3d 558, 562 (7th Cir. 2007)(evaluating retaliation under both statutes).

943, 957 (N.D.Ind. 2009). Under either method, however, Dr. Bayless must establish that he engaged in statutorily protected activity and that he suffered a materially adverse employment action subsequent to his participation in the activity. *Compare Metzger*, 519 F.3d at 681 (under the direct method of proof, a plaintiff must establish that: (1) he engaged in statutorily protected activity; (2) he suffered a materially adverse employment action subsequent to his participation in the activity; and (3) there was a causal connection between the adverse action and the protected activity); *Allen*, 614 F.Supp.2d at 957 n.14 (under the indirect method of proof, a plaintiff can establish a *prima facie* case of retaliation by showing that: (1) he engaged in statutorily protected activity; (2) he suffered a materially adverse action; (3) he met his employer's legitimate expectations; and (4) he was treated less favorably than a similarly situated employee who did not engage in the statutorily protected activity). Based upon the evidence submitted, this Court concludes that Dr. Bayless can not establish either of these first two elements.

Dr. Bayless makes two factual assertions in support of his retaliation claim. First, Dr. Bayless contends that, after he retained an attorney, Dr. May refused to meet with him. In support, Dr. Bayless cites his own deposition testimony, in which Dr. Bayless asserts that when he tried to schedule a meeting with his attorney present, Dr. May's secretary told Dr. Bayless that Dr. May would not meet with him. *See* Bayless Dep., DE 19-2 at 37-38. Second, Dr. Bayless contends that Dr. May refused to provide a copy of the Faculty Handbook to his attorney when requested. Although Dr. Bayless cites additional deposition testimony in support of the latter event, Dr. Bayless did not provide a copy of the substantiating deposition testimony for consideration. As such, the Court can not evaluate this event substantively, as it lacks evidentiary support in the record. Instead, the analysis is limited to Dr. May's alleged refusal to

meet with Dr. Bayless with his attorney present.

Based upon Dr. Bayless' rather limited deposition testimony, it appears that on an unspecified date Dr. May initially attempted to set up a meeting with Dr. Bayless to "discuss his appointment," which Dr. Bayless refused.  (Bayless Dep., DE 19-2 at 37).  Thereafter, following consultation with his attorney, Dr. Bayless contacted Dr. May's office to set up a meeting and demanded that his attorney be present. (Bayless Dep., DE 19-2 at 38).  However, Dr. Bayless contends that Dr. May's secretary told him that Dr. May refused to meet with him.  (*Id.*).  These facts make up the entirety of Dr. Bayless' retaliation claim.

Nothing in the limited deposition transcript testimony in the record suggests that Dr. Bayless made a complaint about age discrimination when he attempted to set up the meeting with Dr. May's office.  Indeed, from the extremely proscribed record in this regard, it is impossible to determine the subject matter of Dr. Bayless' request for a meeting, what particular assertions Dr. Bayless made to Dr. May's secretary, and when Dr. Bayless made his request.  As such, all the Court can determine, assuming the facts are true, is that Dr. Bayless attempted to set up a meeting with an attorney present at some unspecified time; and Dr. May, through his secretary, refused the request.

In order for an employee's complaints to constitute protected activity, they must include an objection to discrimination on the basis of age.  *See* 29 U.S.C. § 623(d).  Without some evidence that Dr. Bayless complained of age discrimination when he requested the meeting, Dr. Bayless' request for a meeting can not be said to constitute protected activity under the ADEA. *See e.g. Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006) ("Merely complaining in general terms of discrimination . . . without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient"); *Hinds v.*

*Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1202-03 (10th Cir. 2008) (finding no protected activity where a plaintiff sent two emails stating that he felt retaliated against for complaining about his employer's management style without alluding to age or age discrimination); *Trammel v. Simmons First Bank of Searcy*, 345 F.3d 611, 615 (8th Cir. 2003) (finding no protected activity where a plaintiff wrote letters accusing his employer of engaging in improper loan procedures without mentioning age discrimination).

Further, even assuming that Dr. Bayless sought a meeting with Dr. May and his legal counsel to discuss age discrimination, and assuming such activity constituted protected activity, Dr. Bayless cannot establish that he suffered an adverse employment reaction as a result. Adverse employment actions have been broadly construed by this Circuit, so long as the adverse actions are material. *Sissom v. Purdue Univ.*, 2006 WL 897572, *10 (N.D.Ind. 2006). "For an employment action to be actionable, it must be a significant change in employment status, such as hiring, firing, or failing to promote." *Bell v. E.P.A.*, 232 F.3d 546, 555 (7th Cir. 2000).

Courts in this Circuit have repeatedly held that an employer's refusal to meet with a plaintiff does not constitute an adverse employment action. *See e.g. Allen v. Potter*, 115 Fed.Appx. 854, 865 (7th Cir. 2004) (unpublished opinion) (holding employer's refusal for a private meeting was not an adverse employment action); *Shrader v. Palos Anesthesia Assocs., S.C.*, 2004 WL 2167909, *12 (N.D.Ill. 2004)(holding that an employer's refusal to meet with plaintiff was not an adverse employment action because the incident was isolated and there was no evidence that the plaintiff was complaining of discrimination when plaintiff made the request); *Bell v. E.P.A.*, 232 F.3d 546, 555 (7th Cir. 2000) (holding that a defendant's refusal to speak with an employee is a "trivial matter[] that do[es] not rise to the level of actionable retaliation"); *Kendra v. Principi*, 2003 WL 21078039, *4 (N.D.Ill. 2003) (holding that

38

employer's refusal to meet with union representations without an appointment was not an adverse employment action); *Togba v. County of Cook*, 48 F.Supp.2d 1104, *1110-11 (N.D.Ill. 1999)(holding that a hospital's refusal to allow its officials to meet with a plaintiff to discuss changes in his employment duties did not constitute an adverse employment action because it did not change the conditions of the plaintiff's employment and such refusal was appropriate given the plaintiff's pending litigation and the officials' high ranks within the hospital). As such, the Court similarly concludes that Dr. May's alleged refusal to meet with Dr. Bayless and his attorney does not constitute an actionable adverse employment action.

Consequently, because Dr. Bayless can not show either that he engaged in protected activity or that he suffered an adverse employment action as a result, Dr. Bayless can not establish a retaliation claim under either the direct or indirect method of proof. *See Sublett v. John Wiley & Sons, Inc*., 463 F.3d 731, 740 (7th Cir. 2006)("Failure to satisfy any one element of the *prima facie* case is "fatal" to an employee's retaliation claim"). Consequently, Ancilla is also entitled to summary judgment on Dr. Bayless' retaliation claim.

### III. Conclusion

For the aforementioned reasons, the Court now **GRANTS** Ancilla's motion for summary judgment, relative to both of Dr. Bayless' claims. [DE 17]. Accordingly, the Court **INSTRUCTS** the Clerk to term this case and enter judgment in Ancilla's favor.

SO ORDERED.

ENTERED:   February 15, 2011

_____/s/ JON E. DEGUILIO_____
Judge
United States District Court